JOSEPH HARRIS *v.* BYRON STEVENS, WILLIAM G. PARMALEE, ERASMUS STEVENS AND STEPHEN D. TICHOUT.

*The rights and duties of railroad companies in regard to the admission of persons into their station-houses.*

A railroad corporation, by erecting their station houses, and opening them to the public, impliedly license everybody to enter them. But this license is revocable as to all persons except those who have legitimate business there, growing out of the operation of the road, or with the officers or employees of the company. The corporation have the right to direct all other persons to depart therefrom, and, on their refusal to do so, may remove them.

It is the duty of every person, who desires to remain in a railroad station-house, for the purpose of taking the cars therefrom, to make known such intention to the officers of the company on being requested to do so; and, if such is the regulation of the company, he may be required to purchase a ticket before he can be permitted to remain in the depot.

One, who desires to take passage upon the cars, must exercise his right to enter and remain in the station-house in conformity with the due and reasonable

regulations of the company as to his conduct while there; and he can not exercise it until a reasonable time next prior to the departure of the train on which he intends to go. What is such a reasonable time depends upon the circumstances of each particular case.

Therefore, where, in an action of trespass to the person, the defendant pleaded that he was the station agent of a railroad company, and that the alleged assault was necessarily committed in removing the plaintiff from the station-house, where he persisted in remaining after the defendant had requested him to leave; and the plaintiff replied, setting forth the obligation of the railroad company as a common carrier, and alleging that the plaintiff went into the station-house, and there purchased a ticket to another station, and that, while he was waiting there for the departure of the train on which he was intending by virtue of such ticket to go, the defendant committed the assault, etc.; *Held*, on special demurrer, that this replication was insufficient, because it did not allege that the train, on which he intended to go, and the departure of which he was then awaiting in the station-house, was expected *soon* to leave.

*Held*, also, that it was not necessary to allege in the replication, that the plaintiff went into the station-house with the purpose of traveling upon the cars, but that it was sufficient if it appeared that such purpose was formed after his entry and before the assault.

TRESPASS for assault and battery. The defendant Parmalee pleaded specially, in substance, that at the time of the alleged trespass the Vermont and Canada Railroad Company was lawfully possessed of a certain close in Essex, called "Essex Junction Station," and that he was their agent, having the custody and control thereof; that the plaintiff entered said close, and there remained against the will of the company and its agent aforesaid, whereupon Parmalee requested him to depart therefrom forthwith; that he refused to do so, and that Parmalee thereupon gently laid his hands upon him for the purpose of removing him from the said close; that the plaintiff resisted and assaulted Parmalee, whereupon the latter necessarily did a little assault and beat the plaintiff in order to accomplish the said purpose.

The defendants, Tichout and Erasmus Stevens, each pleaded substantially the same facts, justifying the alleged trespass, as committed on their part, as the servants and by the direction of Parmalee.

To these pleas the plaintiff replied as follows: that the said Vermont and Canada Railroad Company long before and at the said time, when, etc., was the owner of a certain public highway,

commonly called a railroad, lying and being contiguous to the said close in said several pleas mentioned, which said railroad was at and during the time aforesaid, used and employed by the said railroad company, and by certain other railroad companies, as a public and common carrier for the transportation and carrying of passengers and freight on said railroad.

And the said close in the said several pleas mentioned, was at the said time, when, etc., and long before had been a public and common depot or station, used in connection with, and for the accommodation and convenience of said railroad, at which, at and during the time aforesaid, the engines, carriages and cars of the said railroad companies were accustomed to and did stop for the purpose of receiving and discharging passengers and freight, and for other purposes connected with the business so transacted upon said railroads. And as such public station or depot, the said close was at and during said time lawfully visited and resorted to by all persons having occasion so to do. And the said plaintiff further saith that just before the said time, when, etc., he, the plaintiff, went in and upon the said close, so being such depot and station as aforesaid, and then and there contracted with the said Vermont and Canada Railroad Company, as such common carriers, at and for a certain reasonable consideration, then and there paid to the said railroad company by the said plaintiff, to carry the said plaintiff upon the said railroad and upon the Vermont Central Railroad from the said depot or station to a certain other depot or station in Williston, and then and there received of and from the said Vermont and Canada Railroad Company a certain instrument called a passenger ticket, in due form indicating the right of the plaintiff to be carried as aforesaid.

And that while the said plaintiff was in and upon the said close, and after the making of the said contract with the said Vermont and Canada Railroad Company, and before the performance thereof by the said Vermont and Canada Railroad Company, and while the said plaintiff so held the said ticket and was waiting in said close, so being such depot or station as aforesaid, for the departure of the cars in and upon which the plaintiff intended, and by virtue of the contract and ticket aforesaid had a lawful

7

right, to go from said last mentioned depot or station to said station or depot in said Williston, and before the departure of the cars, they, the said defendants, William G., Erasmus, and Stephen D., well knowing that such contract had been made and that the said plaintiff held the said ticket as aforesaid, unlawfully and of their own wrong committed the said several trespasses in the introductory part of said several pleas mentioned, in manner and form as the said plaintiff hath above in his said declaration alleged, etc., etc.

To this replication the defendants, whose pleas are above stated, demurred upon the following grounds:

1. Because it did not allege, except by way of argument and inference, that the plaintiff went upon the said close for the purpose or with the intent either to go to Williston or to purchase a ticket.

2. Because it did not distinctly or properly allege that after the purchase of the ticket the plaintiff was about to go upon the cars upon that occasion, nor that at the time of the assault he in fact intended to go immediately, or on the next train, to Williston.

3. Because it did not allege that Parmalee, on the occasion of committing the assault, knew that the plaintiff then intended, or was waiting, to go on the next train to Williston.

The county court, at the November Term, 1857,—BENNETT, J., presiding,—by consent of the parties, adjudged *pro forma* the replication insufficient, and rendered judgment for the demurring defendants, to which the plaintiff excepted.

*E. R. Hard* and *J. French*, for the plaintiff.

I. The facts stated in the replication are, *in substance*, a sufficient answer to the pleas.

1. The railroad being a public highway, and the close in question a public depot connected with and used exclusively for the accommodation of the railroad, the plaintiff was lawfully upon the close at the time of the alleged battery, and had a right to remain there, *independent of any rights resulting from the purchase of the ticket.*

The railroad company owning the close in question was created

by public authority and for the *public benefit.* It has not absolute and unlimited control over the property used in its ordinary business, nor such power of disposal and control as is incident to the absolute right of property, but is authorized to acquire and use such property only in the manner necessary to enable the corporation to accomplish the primary and principal object of its incorporation, the public good and convenience.

It is conceded that the railroad company, from necessity and as the servant of the public, has authority to make such rules and regulations concerning the management and control of its property as may be necessary to protect its servants and the public in the safe and convenient use of the road; but beyond this the rights of the public in the property taken for its use by the company are paramount to those of the corporation.

Hence, whatever may have been the plaintiff's object in going to the depot, the company or its servants had no right to exclude him, or to interfere with him while there, unless his character or improper conduct on the occasion in question was an annoyance to passengers or others having business with the road, or his presence was a hindrance or interruption to the officers and servants of the corporation in the performance of their proper duties; *Worcester* v. *Western R. R. Co.*, 4 Met. 566; *Sawyer* v. *R. & B. R. R. Co.*, 27 Vt. 379; *White R. Turn. Co.* v. *V. C. R. R. Co* , 21 Vt. 590; *Commonwealth* v. *Power*, 7 Met. 596; *Hall* v. *Power*, 12 Met. 482; Angell on Carriers, § 530, 530, *a.*; *Jenks* v. *Coleman*, 2 Sumner 221.

2. Independent of the considerations stated in the preceding point, and viewing the railroad company simply as *common carriers* of passengers, it was, unless excused by some sufficient cause, bound by law to receive the plaintiff as a passenger on tender by him of a reasonable compensation. And the company having received payment of his fare to Williston and delivered to him a ticket, he had a lawful right to remain unmolested at the depot until the departure of the train.

The act of the defendants in expelling the plaintiff from the depot was for this reason unlawful; Ang. on Carriers, § 524, 525, 527; *Jenks* v. *Coleman, supra.*

II. The replication is sufficient in form.

1. It was wholly unnecessary to allege in the replication that the plaintiff went upon the close for the purpose of going to Williston or of purchasing a ticket, for whatever might have been his intention in going there, after he had arrived there and purchased his ticket, and while he was waiting for the departure of the train, he had a right to remain upon the premises.

2. The replication does allege what is fully equivalent to the allegations which the demurrer requires, viz: "that after the purchase of the ticket by the plaintiff, he was about to go upon the cars on that occasion;" and this allegation is substantially made with all the directness and precision which the imperfections of the English tongue permit; and this is all that is required in a replication to a plea in bar.

*Geo. F. Edmunds,* for the defendants.

I. The replication is clearly bad in form.

*a.* There is no allegation or pretence that the plaintiff *went upon the close* for the purpose of taking the cars. The replication only says that he went there, and contracted, etc.

*b.* The replication is also cautiously silent as to by *what train,* or *within what period,* the plaintiff contracted to be carried. It only avers that he contracted with the company "to carry said plaintiff upon said railroad and upon the Vermont Central Railroad from said depot" to Williston.

*c.* The replication falls far short of averring that *at the time, when,* etc., the plaintiff was about or intending to *then go* by the *next train,* or any particular train, or to go even on that day at all.

The replication is apparently drawn with a view to avoid any particular proof upon an issue being taken upon it, for upon a traverse of that part of the replication, it would be fully supported by proof of the possession of a ticket, and an intention to go by the train of the next day, or next week; or by proof that the first train to go was not to leave until the next day, or (if the next day was Sunday) until the day after.

The language used certainly does not, even in substance, amount to a justification for remaining on the close after being ordered to leave. The plaintiff could not, by his contract of carriage, acquire a right to remain on the premises of the company

at pleasure. If he could, as he no doubt might, take any train he chose, he must occupy the company's close only on the *occasion* of being about to go, and intending to go *then.*

On this point the replication lacks that certainty and precision which is essential to render a rejoinder of any value.

*d.* The replication fails to aver that the defendants knew of the plaintiff's being on the premises "waiting," etc., or of his intention to go on any train. On the authority of *Commonwealth v. Power*, 7 Met., this was certainly necessary. The pleas state that the plaintiff was requested to leave the close, but *" wrongfully "* and unreasonably *remained* and *refused* to go, whereupon, etc.

Now we insist that a person who has a ticket must do something more than *refuse* to depart when ordered to do so. If he intends to rely upon the authority of his ticket, he must *claim that right at the time*; otherwise, one might, with one ticket, occupy a station-house from one year's end to another. The most that can be claimed for the plaintiff is, that the ticket will protect him *only* when he intends to, and is *about to use it*, on the particular occasion complained of, *and claims that right when the proper authority requires him to depart.* That Parmalee was the proper authority, see REDFIELD on R. R., p. 28.

The right to remain, is at most only a conditional and limited privilege, and, as in other cases, it must be *asserted* on its *true grounds*, in order to be made available.

II. But if it should be thought that the replication does not deny the lawful possession of the company, then the important question arises, upon the substance of the pleadings, what are the rights of the company over its own premises?

The right to exclude persons, not having legitimate business to go upon their premises, is not to be questioned. See REDFIELD on R. R., p. 28.

As the plaintiff, then, was notified to leave, he must stand solely on the right derived from the purchase of his ticket, etc. What was the contract evidenced by the ticket? It was that the company would carry him, etc. *It was wholly executory* at the time of the trespass ; so the replication avers. Then the right of the plaintiff to be upon the premises arose from the *license* of the company implied in the sale of the ticket, that he might be

there to secure the performance of its contract. That was all.

This, then, being merely a *license*, coupled with no interest, and based solely on an executory contract, it might be revoked at any time.

Even if the contract evidenced by the ticket could be construed to give the plaintiff a right to remain on the land of the company until the departure of the train, it could not be upheld as justifying a forcible remaining, for if such a contract would justify remaining a day, it would equally a year, or any other length of time (necessary) ; which is in direct conflict with the statute as to interests in land.

The case of *Wood* v. *Leadbitter*, 13 M. & W. 838, is in point. The whole subject is there reviewed, the cases collected, and the law stated in the most convincing manner.

It may be said that as the company was a common carrier, the plaintiff could lawfully persist in remaining on the premises till the contract should be fulfilled; but we deny that any such conclusion follows from that fact.

Although carriers are bound to convey passengers at reasonable times, etc., yet no person can compel a performance of that duty by force. · A carrier, like other proprietors of property, must be allowed to have exclusive dominion over his own lands, and if he violate any contract, he is responsible in an action.

No case can be found in which a party has been allowed to compel a specific performance of the contract or duty of the carrier, *where the carrier refused to proceed, before the execution of the contract had commenced.* See Angell on Carriers, sec. 524, et seq.

The cases for ejecting persons from cars have no application, for there the contract has been *in part executed*, and the carrier could have no right to expel a person where he did not wish to stop, and where he had not come on board.

Any other rule would lead to the greatest confusion in practice, as well as to more frequent violence than any other.

We submit, therefore, that the law and sound policy coincide in upholding the defence.

PIERPOINT, J. The questions involved in this case arise upon a special demurrer to the plaintiff's replication.

Harris *v.* Stevens et al.

It is insisted on the part of the defendants, among other things specially set forth as cause of demurrer, that the facts alleged in the replication are not sufficient to justify the plaintiff in remaining on the premises of the railroad company after he was requested by the defendant Parmalee (who was the station-agent) to depart therefrom, inasmuch as it is not alleged that the plaintiff was there intending to take the then next train of cars, upon which he was entitled by his ticket to go to Williston, and that the said next train was then about to leave for Williston, and that the plaintiff was then upon the premises of the company awaiting and expecting the arrival and departure of such train.

On the part of the plaintiff it is insisted that the replication is sufficient; that the plaintiff had the right to enter upon the said premises of the corporation, and to remain after he was requested by the agents of the company to depart, and that this right existed independent of his having purchased a ticket, or of any intention to take the cars.

This raises the question as to the relative rights, powers and duties of the corporation and the public, or the individual members of the public, in and over the railroad, the station-houses and the necessary surrounding territory and buildings.

It is conceded by the plaintiff that the corporation must from necessity have the right "to make such rules and regulations concerning the management and control of its property, as may be necessary to protect its servants and the public in the safe and convenient use of the road, but beyond this it is claimed the rights of the public in the property" taken for its use by the corporation, are paramount to those of the corporation." If by this it is meant that the corporation have the sole and entire possession and control of their road and premises, for all purposes contemplated by the act of incorporation, and for which they were authorized to take the property, the correctness of the claim may be conceded, as that is yielding to the corporation all the power and authority that the legislature have taken from the original owners of the land.

But when it is claimed that the corporation have *only* a right to make rules and regulations concerning the property, and only

a limited and qualified possession, and that the public or individuals have a right to enter upon and occupy, or in any manner use, the premises of the road for other purposes than that contemplated by the charter of the company, we think such claim can not be sustained.

No person, other than those from whom the property was taken, either as a member or agent of the company, or as one of the public, has any authority, control or right in or over the premises of the company, except such as is derived directly or indirectly from the act of incorporation.

That vests the title to the land, taken in pursuance of the charter, in the corporation for the purposes specified.    This gives them the right to the sole and exclusive control of it, for the purposes and uses specified in and implied by the charter, and neither the corporation nor the public have the right to use it for any other purpose, or in any other manner.

This exclusive possession and control of the premises would seem to be indispensable to the full exercise and enjoyment of their rights, and a proper discharge of their duties to the public. And this possession of the corporation is not at variance with any rights which the public have in regard to it; indeed, the only right, the public have, is to demand that the corporation shall faithfully discharge the duties towards the public that their charter imposes.

But it is said that railroads are public highways, and that the public have the same right to enter upon them and remain, as upon any other highway, provided the servants of the company are not interfered with, or interrupted in the discharge of their duties, and no rules or regulations of the company are violated.

In the case of *White River Turnpike Co.* v. *Vt. Central R. R. Co.*, 21 Vt, 590, cited by the plaintiff, a railroad is spoken of as an improved highway.   It is a place of public travel, but while it may be said to be improved in its means of travel, the rights and duties of the public, it must be admitted, are greatly changed, so that while for some purposes and to illustrate certain principles that are common to both, it would be proper to speak of railroads as highways, yet for other purposes and to elucidate other principles, nothing could be more erroneous than to regard the

Harris *v.* Stevens et al.

two as standing on the same footing; the rights of the public that are common to the two, are quite limited; on the one they have the right to go when and as *they* please, on the other they have the right to be carried when and as the *company* please, due regard being had to the requirements of their charter, and the express or implied terms of the contract entered into between them and the company.

If then the corporation, under whom the defendants justify, are to be regarded as in the exclusive possession of the premises, neither they nor the plaintiff have any rights or privileges therein, except such as are derived from the charter, or grow out of that which had been done by the one or the other party in view of it, and with reference to the rights and duties created by it.

The question then arises, what rights did the plaintiff acquire by purchasing a ticket entitling him to go upon the train to Williston, and did he so conduct himself in view of these rights as to be able to set them up, in avoidance of the justification pleaded by the defendants.

The railroad company were under a legal obligation to permit any persons to get upon their cars, and to transport them to any place they desired to go to upon the line of their road, where the train was accustomed to stop, upon the payment of the usual compensation therefor, and a compliance with all reasonable and proper rules and regulations established by the company for the safety and convenience of the public, and the proper government and management of their road. Such being the obligation of the company, any person, who desires to go upon the cars, has the right in a proper manner and at a suitable time, to go upon the premises of the company at any station where the passenger trains stop to receive passengers, for the purpose of procuring a ticket and getting on board, and the company has no right to prevent or hinder his coming on their premises, or to order him to depart therefrom, before the departure of the train for the place to which such person intends to go, and such person has the right to remain on the premises of the company, at such station, until the departure of the train, and then to go upon it, and this too whether he has purchased a ticket or not. The right to remain until the arrival of the train, and then to go upon it, does

not depend upon the purchase of a ticket, unless the rules of the company require that all persons shall purchase tickets before they enter the cars. The procuring of a ticket only furnishes evidence of an intent to go upon the train.

This right to enter and remain upon the premises of the company for such purposes, may be forfeited by the improper conduct of the person, or the violation of the rules and regulations of the company, and if he does so forfeit his right to remain, the company, by their servants, may require him to depart, and on his refusal so to do, they may remove him.

Again, the right must not only be exercised in a proper manner, and with a due regard to the just requirements of the company, but it must be exercised within a reasonable time; that is, the person may come upon the premises of the company within a reasonable time next prior to the regular time of departure of the train on which he intends to go, and remain until such train leaves. This right to enter and remain, exists only by virtue of and as an incident to the right to go upon the train, and it is to be extended so far only as is reasonably necessary to secure to the traveler the full and perfect exercise and enjoyment of his right to be carried upon the cars. And what is a reasonable time, must depend much upon the circumstances of each particular case, as it would be impossible to fix upon any definite period that should govern all cases; what would be reasonable in one case might not be so in another.

The situation of the station with reference to public houses, the distance that the intended traveler resides from the station, and many other considerations should all be taken into the account in determining the length of time that it would be reasonable for the person to come to the station and remain, before the leaving of the train on which he intended to take passage.

When the company commence running their trains, erect and open their station-houses, as the places where their trains stop to receive and discharge passengers, and hold themselves out to the world as common carriers of passengers, they then acquire all the rights and privileges, and become liable to all the duties and responsibilities, as between themselves and the public, that appertain to that relation at common law, and by thus doing they give

an implied license *prima facie* to all persons to enter their premises, and no person is a trespasser by merely entering therein. But at common law such license is revocable, and when revoked, such right to enter or remain is terminated; 7 Metcalf 596.

Under ordinary circumstances, the common carrier assumes the position voluntarily, and may throw off the character and its responsibilities at any time he sees fit, as to all transactions the performance of which he has not entered upon. He owes no duties, and is under no responsibilities to the public, except such as grow out of and belong to his character as common carrier.

But we apprehend it is not so with railroad corporations; they are not like mere private corporations or individuals, but are to a great extent public in their character; they are created for the sole purpose of erecting, putting in operation and carrying on a public work, and are authorized to take private property for that purpose, *and for that reason.* The great object for which they are created and invested with their extraordinary powers, is that they shall act as carriers of persons and property upon their roads, when completed, and by accepting their charters, constructing and putting in operation their roads, they not only take upon themselves all the duties and liabilities incident to the character of common carriers, but they assume other important duties and liabilities. The public have granted them charters for specified purposes, and by accepting them they have obligated themselves to carry out those purposes. They not only have the *right* to act as common carriers, but they are *bound* to act as such. The public have the right to insist that they shall continue so to act. They can not throw off this responsibility, and absolutely refuse to discharge their duties, except by an abandonment and surrender of their charters; they can not of their own motion, while acting under their charters and operating their road, divest themselves of their character of common carriers, and refuse to receive and carry passengers upon their roads, or refuse to allow them to come upon their premises at the proper place and time, for the purpose of taking passage. The public, for such purpose, have the right to enter upon the premises of the corporation by virtue of a higher right than the mere implied revocable license of the corporation, as carriers at common law. It is a part of

the contract by which they hold their charters, that the public are to have the right to enter upon the premises acquired under their charters, for the purpose of being carried on their roads, and this is a right which the corporation can not revoke, or refuse to permit the exercise of. They can regulate its exercise by such rules as are necessary to secure the full and perfect enjoyment of it on the part of the public, and prevent its infringing on the rights of the corporation. But as has been before remarked, the right to enter, in the case of an intended passenger, depends upon the intent to go upon the train as a passenger, and the time when the entry is made for such purpose. The right to enter and remain upon the premises of a railroad corporation is not common to all; it must depend upon the object and business of the person who enters.

As has been said, the corporations, by erecting their station-houses and opening them to the public, impliedly license all to enter. Still, such license is revocable as to all, except those who have legitimate business there growing out of the road, or with the officers, or employees of the company. As to persons having' no business at the stations, the corporation, by its officers and agents, have the right to direct them to depart, and on their refusal so to do, they may be removed by such agents. The existence of this right in the corporation would seem to be indispensable to the comfort of passengers in getting to and from the cars, and in transacting that business with the agents of the company which is necessarily done at the stations, and also to the protection of the property intrusted to its care, for the safety of which it is held to the strictest accountability.

The public interest not only requires the existence of this right in the corporations, but its judicious exercise. Without it the stations on the lines of our several roads, in many instances, would become the places where the idle and vicious would resort to pass away their time, and indulge in practices and pursuits, that are always alluring to the young and inexperienced, but which too often lead to a life of infamy. In short, let it be understood that any person has the right to resort to railroad stations at all times and to remain as long as he pleases by virtue of the undivided portion of the right of *eminent domain* that is supposed to

exist in his person as a member of the great public, and many of our stations would become public nuisances to which it would be neither comfortable nor safe for travelers to resort.

The principle then being established, that a person intending to take passage on the cars has the right to go upon the premises of the corporation where he intends to get on board the cars, within a reasonable time before the expected departure of the train on which he intends to go, and to remain there until the departure of such train, but has not the right to enter and remain upon such premises after having been requested to leave by the corporation, unless he is then intending so to go upon the train, and that the corporation has the right to remove him if after request he refuses to depart; it would seem to be but reasonable and just, inasmuch as the right to remain after request to leave is made to depend entirely upon the intent of the party to take the train, to require of him, that, on such request being made, if he intends to rely on such right, he should make known his intent to the persons making the request, or show that such persons had knowledge thereof from some other source. This doctrine is fully recognized in the case of *Commonwealth* v. *Powers*, 7 Met. 596; see also Redfield on Rail. 27–8.

The question then arises, has the plaintiff in his replication to the defendants' plea, set forth with that degree of certainty, required by the rules of pleading, such facts as are sufficient to justify him in attempting to remain upon the premises of the corporation after a request by their agents to depart.

The plaintiff alleges that he entered upon the premises of the corporation at their station in Essex, and purchased a ticket to the station in Williston.

It is insisted by the defendants that the replication is insufficient, in that it does not allege that the plaintiff entered upon the premises, intending to go to Williston, or to purchase a ticket.

We think it was not necessary to allege that fact, for if he entered without that intent, still, if after his entry he formed the intent, his right to remain thereafter would be the same as though it had existed at the time of entry.

The plaintiff also alleges that while he was so upon said prem-

ises, and after the purchase of said ticket, and while he was waiting for the departure of the cars upon which he intended and by virtue of his ticket had a right to go, and before the departure of the train, the defendants "well knowing that such contract had been made, and that the said plaintiff so held the said ticket as aforesaid, unlawfully," etc.

The replication contains no allegation as to the time when the train was, or was expected, to leave the station, with reference to the time when the plaintiff entered, or when he was ordered to depart, and the acts complained of were committed. The allegations are consistent with the fact, that the train on which the plaintiff's ticket entitled him to go, and on which he intended to go, and for the departure of which he was waiting, was not to leave or expected to leave for twenty-four hours, or even forty-eight hours thereafter, and still the ticket may have been for the next regular train between the two stations. But it is not alleged that it was the intent of the plaintiff to go upon the then next regular train, or that his ticket was for such train. For aught that is alleged his ticket may have been for, and his intent to go upon, one of those trains called excursion trains that are advertised to run at some particular time, and for which tickets are sold many days in advance of the time of departure. In this respect we think the replication is defective; the plaintiff should have alleged that at the time, when, etc., he was at the station awaiting the departure of a train that was expected soon to leave, and on which he intended to go. The replication should show that the plaintiff was there intending to go upon a train that was expected to leave within such a short period of time thereafter, that, in view of the rule as before laid down, he would have the right to remain at the station until its departure. This replication, we think, does not show such a state of facts as are necessary to vest such right in the plaintiff, and therefore it is insufficient.

The judgment of the county court is affirmed.