# Illinois Central Railroad Company v. Lewis McMillion.

## Gen. No. 4,641.

1. PASSENGER AND CARRIER—*when relation of, does not exist.* The relation of passenger and carrier does not exist where it does not appear that the party claiming to be a passenger has placed himself in charge of the carrier for transportation and where it does not appear that the carrier has expressly or impliedly accepted such party for carriage.

2. PASSENGER AND CARRIER—*when relation of, ceases.* The relation of passenger and carrier ceases at the end of the journey when the passenger has had a reasonable time and opportunity to leave the premises of the carrier.

3. PASSENGER AND CARRIER—*when relation of, does not exist.* When a party comes upon the platform at which a train has arrived and asks if he can ride thereon and is properly refused by the carrier (such train being a freight train), he does not become a passenger and is not entitled to the rights of a passenger.

4. LICENSEE—*what duty railroad company owes to.* A railroad company owes no other duty to a mere licensee upon its premises than to refrain wilfully or wantonly from injuring him.

5. CONTRIBUTORY NEGLIGENCE—*when person failing to look and listen guilty of.* *Held,* from the evidence in this case, that the plaintiff in failing to observe an approaching railroad train was guilty of contributory negligence which resulted in his injury.

Action in case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the April term, 1906. Reversed, with finding of fact. Opinion filed October 16, 1906.

SNAPP, HEISE & DIBELL, for appellant; J. M. DICKINSON and J. G. DRENNAN, of counsel.

BARR, BARR & BARR, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Appellee sued appellant to recover for personal injuries received while attempting to cross one of appellant's tracks to get on a freight train at Manteno. Appellee obtained a verdict for $10,000; the court required a *remittitur* of $2,500, which was consented to by appellee, and judgment rendered for $7,500. Appellant appeals the case to this court, and insists the Circuit Court should have directed a verdict in its favor.

The declaration consists of five counts, and alleges in legal form in the different counts, that plaintiff sought to become a passenger for hire upon a passenger train of appellant, etc.; that while seeking to become a passenger for hire and acting under the direction of one of defendant's station agents, etc., that he was received upon the premises of defendant as a passenger, etc., and that he was on the premises of defendant for the purpose of becoming a passenger for hire, etc. Each count alleges that plaintiff was in the exercise of due care and that he was injured because of the negligence of defendant in carelessly and negligently operating a train on the north-bound track, while plaintiff was attempting to board a train

on the south-bound track of defendant's double track railway, whereby he was knocked down and run over, etc., and injured.

The evidence showed that on the 9th of February, 1904, the appellee, being of the age of twenty years, with his brother Henry, a year younger, who also has a suit pending for injuries received at the same time, went to the depot of appellant in Chicago and desired to buy two tickets to Cincinnati, with the privilege to stop over at Manteno, while on the way to the home of their father in Kentucky, where another brother had recently died. The railway company would not sell them tickets with stop over privileges, so they bought tickets to Manteno. Their object in stopping at Manteno, as stated by them, was to collect $25 that was due Henry from a farmer named Gilkerson, for whom Henry had worked. The appellant's railway at Manteno runs northeasterly and southwesterly, with an up grade from the south to the north, and consists of three tracks. The depot is on the east side of all the tracks, with a platform sixteen feet wide, between the depot and the most easterly track, which is used by the north-bound trains; the next track west is used for south-bound trains, and the other track still further west is a switch track. The depot has a waiting room in the north end with the ticket office in the center, which has a bay window projecting three feet upon the platform. The boys arrived at Manteno on one of appellant's trains about eleven o'clock at night. There is a difference in the testimony as to what occurred after they reached Manteno. They got off the train on the center track, and crossing the east track, entered the waiting room at the north end of the depot. The night was very cold, it being below zero. The boys testified that they asked the agent when they could get a train for Cincinnati, and he told them they couldn't get one from there, but could get one from Kankakee, fourteen

miles distant, at six the next morning; that Henry, who had lived near there, and was acquainted there, went out to seek a hotel about which they had asked the agent, where they could stay all night, but could not get into any hotel at that hour. Henry came back and they staid in the waiting room. In about an hour and a half after arriving at Manteno, they again talked to the agent, while another man was in the office, as to when they could get a train to Kankakee, and they say he told them there would be a train due there in a few minutes, and closed the ticket window. After the window was closed five minutes, appellee, who had been sitting on a box, and Henry who had been lying on the floor, say they heard the agent go out on the platform, and seeing the flash of a lantern, they also went out and saw the agent standing on the platform close to the east track, two rods south of them, with a lantern, and a train standing or moving slowly on the south-bound track, with red lights. Appellee says it was standing still; that another man was standing by the agent; that they walked south to the agent and asked him if that was their train, and the agent told them it was; that they then started and walked twelve feet north by the north-bound track, and then stepped on that track, and went diagonally about twelve feet across it, when they were struck by a north-bound train. They say the agent called to them while on the track—"That is a freight train; you will have to bum it." They say their sight and hearing were good, and that they heard no bell or whistle nor saw any train or headlight of a train, on the north-bound or east track, although they walked about two rods directly towards the approaching train, and stood facing south talking to the agent. The fireman on the north-bound train testified that he went down on the steps of the engine on the engineer's side, fifty to one hundred feet from the depot, to get the orders from the agent, and saw four or five men standing on the

platform, and while he was on the steps, saw two of them running alongside the engine north on the platform, but could not tell where they went; that a person cannot be seen under the headlight, the headlight throwing its flash thirty to fifty feet ahead of the engine; if they got in front of the engine they must have run past it.

Smith, a farmer and stock man, heard the talk in the office, and both Smith and the agent testify, that the boys asked when they could get a train to Kankakee, and that the agent said not before ten the next morning; and the agent testified that they then asked if they couldn't get a freight, and were told there was no freight that carried passengers. Just prior to the accident Smith, and Morrison, a rural letter carrier, were on the platform with the agent and heard the boys ask if they could take that train for Kankakee, and all three testify the agent said: "No, you can't, unless you bum it." The proof was that this was a freight train and did not carry passengers; also that there was an automatic bell on the north-bound train, and that it was ringing all the way from Kankakee; that it whistled at Manteno at the mile post and twice for signals; that this train was going about fifteen miles an hour, and that the board was set against it at Manteno; that the engineer acknowledged the board by one blast of the whistle, and the operator having given the signal with the lantern to go ahead, the engineer answered it by two blasts of the whistle when the engine was one hundred and fifty or two hundred feet from the depot.

Appellee was thrown on the east side of the track three or four rods north of the depot; he was seriously hurt, losing one leg and his arm was badly injured.

It is insisted that the proof fails to show that appellee was a passenger, or that he had acquired any of the rights of a passenger, and that appellant owed no duty to him, except to abstain from wilfully or wantonly injuring him. The proof by appellee and his

brother shows that they came to Manteno expecting to go to a hotel for the night, and then to go three and one half miles into the country the next morning to collect some wages due Henry; that having arrived at eleven o'clock at night, they could not awaken anyone so as to get lodging in either hotel in the village that night. They did not intend to go further that night, nor to leave for Cincinnati until the next day. The train they attempted to get on after changing their plans, was a freight train that did not carry passengers. Smith, a disinterested witness, and Marshall, the agent, say that immediately before the injury they asked: "Can we take that train?" and Smith and Morrison and the agent say the agent replied: "No, you can't, if you do you will have to bum your way." They had not bought a ticket and had not expressed any desire to buy one, although they say the agent told them a train would be along in a few minutes, and under their statement the ticket window was open until five minutes before the freight train came in, which they attempted to get on. Smith and the agent say appellee had been told in the office that the first train that would carry passengers to Kankakee was at ten o'clock the next morning.

They were using the premises of appellant, not as an appurtenance to the railroad as a convenience for passengers, but as a lodging house, because the hotels were shut up. Appellee had not placed himself in charge of appellant for transportation, and appellant had not expressly or impliedly accepted him for carriage. When they alighted from the train from Chicago, having safely arrived at the depot in Manteno, they were then in duty bound to leave the premises of appellant in a reasonable time, and if they did not leave them, they would become mere licensees until such time as some new relation by contract, express or implied, for their carriage from Manteno to Kankakee had been established.

The relation of carrier and passenger ceases at the end of the journey when the passenger has had a reasonable time and opportunity to leave the carrier's premises. Chicago, R. I. & P. R. R. v. Barrett, 16 Ill. App. 17; Harris v. Stevens, 31 Vt. 79. One who desires to take passage upon the cars has the right to enter and remain in the station house, but he cannot exercise such right until a reasonable time next prior to the departure of the train on which he intends to go. Harris v. Stevens, *supra.*

Appellee had ridden to the end of his ticket, and had got off the train with the purpose of going to a hotel for the night and going into the country the next morning. He had informed the agent of his purpose of going to a hotel, and had never expressed to the agent his change of mind, although making inquiry about the trains, until he says he asked the agent on the platform, "Is this our train?" and says the agent told him it was, and says the agent told him a moment later that he could not ride on that train unless he beat his way, the train being a freight train and not carrying passengers. When the evidence of appellee as to what the agent said about beating his way is considered with the evidence for defendant, the decidedly clear preponderance of the evidence is that appellee knew he could not get on a train as a passenger until the next day, and that he was attempting to ride in defiance of the regulations of appellant. When appellee came out on the platform and asked if he could ride on that train, and the appellant there refused to receive him as a passenger, as it had a right to do, it not carrying passengers on that train, such offer at that time did not make him a passenger under appellant's control and care. Ill. Cent. R. R. Co. v. O'Keefe, Admrx., 168 Ill. 115; C. E. & I. R. R. Co. v. Jennings, 190 Ill. 478; Strong v. North Chicago St. Ry. Co., 116 Ill. App. 245; Spannagle v. C. & A. R. R. Co., 31 Ill. App. 460.

The train appellee arrived on had been gone over two hours; no train carrying passengers went in the direction he wanted to go; if he had decided to take the first train carrying passengers in that direction, for over eight hours after he was injured, and having been told when the train would leave Manteno, he was a licensee using the premises of appellant for his own convenience, without objection, at the time he was injured.

It is further contended that if the appellee was not a passenger, still it was appellant's duty to exercise ordinary care for his safety, and that it failed in such duty. The appellant did not in any way consent that he might ride on the freight train. He was a licensee, about the depot, until a reasonable time before the departure of the passenger train at ten the next day, to whom appellant owed no duty, except to refrain from wilfully or wantonly injuring him. Gibson v. Leonard, 143 Ill. 182; Wabash R. R. Co. v. Jones, 163 Ill. 167.

The next question, and a vital one to be considered, is, was appellee in the exercise of due care for his own safety? He was twenty years of age, with good hearing and eyesight. He came out of the north waiting room, and says he walked two rods towards where the agent stood with a lantern, and other evidence shows that the agent had a ring with an order on it, to be caught by the men in charge of the engine on the northbound train, the one that injured appellee. The train was a freight running up grade about fifteen miles an hour, with a bright headlight on the engine and an automatic bell ringing; it had whistled three times; once one hundred and fifty to two hundred feet from where he was struck. Appellee says he did not look down the north-bound track; that he did not see the train nor know that it was coming; that after speaking to the agent he turned and walked north and was struck by the engine about two rods north of where the agent stood. He knew he had to cross a track to get to the

train he says he wanted to get aboard. His evidence and his actions as detailed by himself show clearly that he was not only lacking in ordinary care, but very negligent.

The case of Bjork v. I. C. R. R. Co., 85 Ill. App. 270, is in point, and the facts were similar to the case at bar, except in that case it was claimed the headlight was obscured by smoke. The injured parties testified they did not hear any whistle or bell, and the court said, where the conduct of an injured person is so clearly and palpably negligent that all reasonable minds would so pronounce it without hesitation or dissent, the court may and should direct a verdict accordingly. Wilson v. I. C. R. R. Co., 210 Ill. 603; West Chicago St. Ry. Co. v. Tuerk, 193 Ill. 390; Patterson, Admr., v. Chicago & W. I. R. R. Co., 111 Ill. App. 442; Ludolph, Excr., v. C. & N. W. R. R. Co., 116 Ill. App. 239.

When the facts are ascertained so that there is no dispute about them, or the evidence is such that all reasonable men would be agreed in their conclusion from it, then the question of negligence applied to those facts becomes a question of law and comes within the province of the court so that a particular verdict may be directed. C. & N. W. R. R. Co. v. Hansen, 166 Ill. 623.

The proof that the headlight of the heavy locomotive and appellee were approaching each other so closely, and that appellee walked two rods towards the engine, and then stood looking toward the locomotive while speaking to the agent, and yet claims he did not see it, shows that his statements are not in accordance with ordinary human experience and cannot be explained on any reasonable theory, except that he was clearly and palpably negligent and reckless of his surroundings. It was a physical impossibility that he did not see the approaching locomotive if he had good eyesight. The testimony of a witness to that

which is physically impossible, must be rejected as not in accordance with the truth. C. & E. I. R. R. Co. v. Kirby, 86 Ill. App. 57; Chicago, P. & St. L. Ry. Co. v. DeFreitas, 109 Ill. App. 104; Artz v. C., R. I. & P. R. R. Co., 34 Ia. 153.

The conclusion is forced upon us by the clear preponderance of the evidence, considered with his route in attempting to cross the track, that he saw the northbound train, and misjudged its speed, tried to run around the engine and cross the track ahead of the engine that injured him, and that he was not in the exercise of due care for his own safety. If, however, he did not hear the rumbling of the approaching train and did not see it or its headlight, and did not observe the meaning of the agent's presence on the platform with orders in his hand, and did not see the signal given by the agent to the approaching train, and started across the track without looking to see if any train was approaching, then he was clearly negligent and not exercising ordinary care. The negligent action of appellee was the direct cause of his injury, and the peremptory instruction to find for the appellant should have been given.

The judgment of the Circuit Court will be reversed.

*Reversed.*

Finding of facts, to be incorporated in the judgment:

We find that plaintiff was not a passenger, and that he was injured by reason of his own negligence and lack of due care for his own personal safety.