THOMPSON'S EXPRESS AND STORAGE COMPANY, body corporate, respondent,

*v.*

NORMAN MOUNT et al., appellants.

[Decided June 14th, 1920.]

1. A railroad company can give an express company an exclusive right to operate hacks and omnibuses in a case where it is under no public duty to serve all who come, and has express statutory authority to exclude from its property all except travelers.

2. Such privilege is not unjustly discriminatory within the prohibition of the Public Utilities act. *Supp. Comp. Stat. p. 1280 pl. 17.*

On appeal from a decree of the court of chancery advised by Vice-Chancellor Foster and reported in *88 N. J. Eq. 535.*

The Central Railroad Company of New Jersey made a written agreement with the complainant giving it the privilege of soliciting on the platform of the Lakewood station orders for baggage delivery, hack, taxicab and omnibus service, from arriving passengers, and also the privilege of soliciting on westbound trains orders for like service to and from Lakewood station. These privileges were to be exclusive to such extent as the railroad company might lawfully so accord.

The defendants solicited like orders upon the station platform. The present bill was filed to enjoin this interference with the complainant's exclusive rights under the agreement with the railroad. The injunction was granted and the defendants appealed.

*Mr. Wilfred H. Jayne, Jr.,* for the respondent.

*Mr. Charles E. Cook,* for the appellants.

The opinion of the court was delivered by

SWAYZE, J.

The general question raised is not new. The great weight of authority sustains the complainants. It is enough to cite *Barney* v. *Oyster Bay Steamboat Co., 67 N. Y. 301; Old Colony Railroad Co.* v. *Tripp, 147 Mass. 35; New York, New Haven and Hartford Railroad Co.* v. *Scovill, 71 Conn. 136; 41 Atl. Rep. 246; Donovan* v. *Pennsylvania Co., 199 U. S. 279.* It would serve no useful purpose to repeat the reasons so well stated in these cases. All that is required of us is to pass upon the effect of our own statutes.

1. The first act to require consideration is the Railroad act of 1903. Section 22 (*Comp. Stat. p. 4230*) enacts that any railroad company may erect a fence or other enclosure around its stations so as to prevent any persons other than passengers from coming near its trains and may exclude from such enclosures all persons except travelers. The act is in substance the same as the act of 1839 (*P. L. p. 170; Rev. Stat. p. 594*) and antedates by ten years the charter of the Central railroad. That railroad has therefore always had the right to exclude from its stations all persons except travelers, and the agents of the company. The importance of the enactment to the present purpose is that it demonstrates, if demonstration were needed, that the legislature could not have meant to require railroads to transport passengers beyond their own stations, for such transportation would require the entrance of others—hackmen and the like— to the station grounds. As the railroad business developed and towns increased in size a demand arose for cab and omnibus service. This was a kind of public service which the railroads might well provide for the better accommodation of the traveling public. Even if they were without authority to do so under their charters, the case would come within the ruling of the United States supreme court in *Jacksonville Railway Co.* v. *Hooper, 160 U. S. 514* (at *p. 523*). The court said: "Although the contract power of railroad companies is to be restricted to the general purposes for which they are designed, yet there are many transactions which are incidental or auxiliary to its main

business, or which may become useful in the care and management of the property which it is authorized to hold and in the safety and comfort of the passengers whom it is its duty to transport. Courts may be permitted, where there is no legislative prohibition shown, to put a favorable construction upon such exercise of power by a railroad company as is suitable to promote the success of the company within its chartered powers, and to contribute to the comfort of those who travel thereon." It was held in that case that the railroad company might under the Florida statute even lease a summer hotel. The principle was approved by the same court in *Union Pacific Railway Co.* v. *Chicago, &c., Railway Co., 163 U. S. 564, 592,* and applied to an agreement by one railroad with another for the right and privilege to move and operate its trains over the tracks of the latter. We do not question the right of the Central Railroad Company to operate hacks and omnibuses in connection with its train service for the convenience of its passengers, and if it had undertaken to do so, perhaps a different question would now be presented. It has not done so but has merely contracted that no one but the complainant shall have access to its station and platform for the purpose of conducting business which the railroad itself has not undertaken. The question we have to decide is not, as counsel urges, whether the railroad in the performance of a public duty can discriminate between the complainant and other hackmen, but whether the railroad company can give the complainant an exclusive right in a case where neither the complainant nor any of the defendants have any right whatever, or, in other words, whether the railroad may select its own company in a case where it is under no public duty to serve all who come, and has express statutory authority to exclude all except travelers. Reason clearly answers in favor of the exclusion. The authorities above cited justify the exclusion on the ground that even where the public duty exists, the right of the railroad company to make reasonable regulations involves the right to protect itself and its passengers from the turmoil and danger involved in a competition between hackmen on the platform of a railroad station and the consequent liability of the railroad company to respond in

damages to a passenger in case of injury. *Exton* v. *Central Railroad Co.,* 62 *N. J. Law* 7; *affirmed,* 63 *N. J. Law* 356. We are not dealing with visions of possible dangers but with dangers that have actually occurred and led to the regulations for protection of passengers reviewed in the cases cited. No case has arisen of complaint by passenger or traveler of such regulations. The defendants set up rights that do not exist. Their real complaint is not that they have been denied rights, but that a privilege which the railroad was free to refuse to all, has been granted to the complainant. The railroad may well say like the householder in the parable to the servant who demanded more wages than his contract called for because other servants had made a better bargain: "Friend, I do thee no wrong. Is it not lawful for me to do what I will with my own?" A different case might arise if the railroad were under a legal duty to allow hackmen to do business and ply their calling on railroad property. Our view has not only reason on its side but also the authority of the highest tribunal which can pass upon the question of the equal protection of the laws. In the *Express Cases, 117 U. S. 1,* the United States supreme court held that railroad companies are not required by usage or by the common law to transport the traffic of independent express companies over their lines in the manner in which such traffic is usually carried and handled, and need not, in the absense of a statute, furnish to all independent express companies equal facilities for doing an express business upon their passenger trains. The result was that the right of an express company to the necessary transportation rested upon contract and was exclusive of companies having no contract. The reasons are well stated by Chief-Justice Waite on pages 23, 25. A similar question arose in *Chicago, &c., Railroad Co.* v. *Pullman Car Co., 139 U. S. 79.* The case is even stronger than the *Express Cases,* since the court held that the railroad company was under a duty arising from the public nature of its employment to furnish for the use of passengers on its lines such accommodations as were reasonably required by the existing conditions of passenger traffic, including sleeping and parlor cars. This duty, however, did not forbid the railroad company from em-

ploying the Pullman company to supply drawing room and sleeping cars, and from giving that company an exclusive right to furnish cars for that purpose. Under that ruling the grant of an exclusive right to the present complainants might be justified by the railroad company assuming to render cab and like services and employing the complainants as its agent. It stands, however, upon the ground that the service is outside of its public duty until voluntarily assumed. Of course, if the railroad company is under no legal compulsion, it may if it voluntarily permits hackmen to solicit business on its station grounds, do so to the extent it chooses and no more. In *Santa Fe Railway* v. *Grant Brothers Construction Co., 228 U. S. 177*, the construction company recovered judgment for the value of property destroyed by a fire said to be due to negligence of the railroad company. By the existing contract between the railroad company and the construction company, all risk of loss was to be borne by the latter. To this it was answered by the plaintiff that it is the established doctrine that common carriers cannot secure immunity from liability for their negligence by any sort of stipulation. To this the court said: "Manifestly, this rule has no application when a railroad company is acting outside the performance of its duty as a common carrier. In such case, it is dealing with matters involving ordinary considerations of contractual relation; those who choose to enter into engagements with it are not at a disadvantage; and its stipulations even against liability for its own neglect are not repugnant to the requirements of its public service. The rule extends no further than the reason for it. It is apparent that there may be special engagements which are not embraced within its duty as a common carrier although their performance may incidentally involve the actual transportation of persons and things, whose carriage in other circumstances might be within its public obligation."

The same result was reached by this court in *Dodd* v. *Central Railroad Co., 82 N. J. Law 524; affirmed,* on the opinion of our supreme court, *80 N. J. Law 56.* The same view was reaffirmed by the United States supreme court in *Robinson* v. *Baltimore and Ohio Railroad, 237 U. S. 84.* The rule is applicable in the

present case and precludes the defendants from claiming that the railroad furnish them with facilities which it is not required to furnish anyone.

2. What we have already said probably suffices to dispose of the argument that the making of an exclusive contract with the complainant is unjustly discriminatory within the prohibition of section 18 of the Public Utilities act. *Supp. Comp Stat. p. 1280 pl. 17.* The act can only refer to what the public utility is under a legal obligation to do, and cannot refer to what it is under no legal obligation to do. Much less can it operate to impose upon the railroad company an obligation to throw open its station and grounds which it is expressly authorized by the Railroad act to close to all but passengers. No right is here infringed since it is entirely open to passengers to employ any cabmen they wish. The injunction only prohibits soliciting on the station platform. The prohibition of the Public Utilities act is directed against unjust discrimination. It is well settled that provisions of that kind are not infringed where the railroad has undertaken to render services if in fact it need not render them. *Interstate Commerce Commission* v. *Baltimore and Ohio Railroad, 145 U. S. 263; Baltimore and Ohio, &c., Railway* v. *Voight, 176 U. S. 498.* For example, under the Interstate Commerce act it is not unjust discrimination to deliver freight free in one town and not in another. *Interstate Commerce Commission* v. *Detroit, &c., Railway Co., 167 U. S. 633.*

These views lead to an affirmance of the decree. The complainant is entitled to costs.

*For affirmance*—SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, ACKERSON—10.

*For reversal*—WILLIAMS, TAYLOR, GARDNER—3.