RALEIGH-DURHAM AIRPORT AUTHORITY, APPELLANT (PLAINTIFF) v. GEORGE STEWART AND CLYDE LEASING, INC., TRADING AND DOING BUSINESS AS BUDGET RENT-A-CAR, APPELLEES (DEFENDANTS)

No. 9

(Filed 10 March 1971)

Aviation § 1; Carriers §§ 2, 13— airport authority — right of car rental company to pick up and discharge passengers

　　Although an airport authority may grant one or more concessions to car rental companies and may permit them to enter and remain upon its premises for the solicitation of business, while denying that privilege to other car rental companies, it may not forbid such other companies, in an otherwise lawful and proper manner, to enter its premises and remain thereon for such time as is reasonably necessary to discharge an outgoing passenger and his baggage or to pick up an incoming passenger and his baggage pursuant to an actual, previously made contract or a previously received request for such service, since to do so would deny the passenger his right to convenient ingress and egress to and from the airport terminal. G.S. 63-53(3).

ON *certiorari* to the Court of Appeals to review its decision, reported in 9 N.C. App. 505, 176 S.E. 2d 912, reversing the judgment of *Bailey, J.,* at the 8 June 1970 Civil Session of WAKE.

The Airport Authority, a municipal corporation organized pursuant to Chapter 168 of the Public-Local Laws of 1939, operates and controls the Raleigh-Durham Airport. The properties of the Airport are owned by the Cities of Raleigh and Durham and the Counties of Wake and Durham, having been acquired and developed with non-tax public funds. The corporate defendant is engaged in the business of renting automobiles to the public. The individual defendant is its president.

The Airport Authority brought this action to enjoin the defendants from entering upon the Raleigh-Durham Airport premises for the conduct of such car rental business. The matter was heard in the Superior Court upon facts stipulated by the parties, who waived a jury, and agreed that, based upon such facts and conclusions drawn therefrom, the court might enter its judgment.

The court entered judgment setting forth its findings of fact, which do not vary materially from the stipulations. Upon such findings, the court concluded that the Airport Authority operates the Airport in a proprietary capacity, that the Airport may deny the use of its parking areas, roadways, walkways and other facilities for the conduct of any private business not authorized by it, and that the conduct of the corporate defendant constituted a continuing trespass upon the property of the Airport and a use thereof for its private business purposes without permission of the plaintiff. The judgment permanently enjoined the defendant "from using the roadways, parking areas, loading areas, Terminal Building, and any other facilities or property of the Raleigh-Durham Airport Authority in the conduct of its business, including picking up persons and baggage and transporting them over the lands comprising the Raleigh-Durham Airport and transporting and discharging them over the lands of the Raleigh-Durham Airport, as a part of and in connection with its business of leasing motor vehicles for hire." The court's findings of fact, pertinent to this review, renumbered, may be summarized as follows:

1. The Airport Authority is authorized to operate, regulate, or grant to others the right to operate on the Airport premises

various businesses, amusements and concessions, including automobile rental services.

2. The Airport Authority has granted to three other companies (Hertz, Avis and National) the authority to conduct their respective car rental businesses on and from the Raleigh-Durham Airport.

3. The corporate defendant, affiliated by contract with Budget Rent-a-Car, has no contract with or authority from the Airport Authority to operate its car rental business on and from the Raleigh-Durham Airport, but has leased property adjacent to the Airport property, from which leased property it conducts its business.

4. In such business the corporate defendant leases automobiles to airline passengers in response to telephone calls from such passengers or other arrangements previously made with such passengers.

5. In the conduct of such business, the corporate defendant regularly picks up its customers at the Raleigh-Durham Airport and transports them to its leased premises, where arrangements for the rental of its automobile by the passenger are completed. As part of its contract with the passenger, the corporate defendant also transports the passenger and his baggage back to the Airport Terminal Building from its leased premises when his use of its car is concluded. In such transportation of its customer from and to the Airport Terminal Building, the corporate defendant uses the roads, parking and baggage pickup areas of the Airport, customarily providing such transportation in the same vehicle which it leases to its customer.

6. The Airport Authority advised the corporate defendant that such conduct of its business, without a contract with the Airport Authority, constituted a trespass upon the Airport property and requested the corporate defendant to cease all such operations on the property of the Airport.

7. Thereupon, the corporate defendant applied to the Airport Authority for permission to operate on the Airport, but the application was denied and no such permission has been granted by the Airport Authority to the corporate defendant. Nevertheless, the corporate defendant continues and proposes to continue its operation, making use of the Airport properties as above described.

Stipulated facts, not specifically set forth in the judgment as found by the court, include these:

(1) The three car rental companies, with whom the Airport Authority has concession contracts, pay to the Authority fixed annual amounts, plus a percentage of their gross receipts from their business at the Airport and rent for space used by them on the Airport premises for the storage of automobiles and other business purposes. These companies do not use the loading and unloading areas maintained by the Airport Authority in front of the Terminal Building for temporary use by the public, but lease from the Authority specified areas for such purposes.

(2) The contracts between the corporate defendant and its customers are consummated in one of the following ways: (a) The customer may go in person to the defendant's place of business, off the premises of the Airport, and there sign a rental agreement and accept delivery of an automobile; (b) the customer may call the corporate defendant from a public telephone in the Airport terminal, whereupon it will dispatch an automobile, driven by its employee, to the Airport Terminal Building, locate the customer, pick him up with his baggage and transport him to the defendant's place of business where the rental agreement is signed and the automobile is delivered to the customer; (c) the customer may make arrangements prior to the arrival at the Airport, in which event he is met at the designated time at the terminal by the defendant's employee and he and his baggage are transported to the defendant's place of business for the signing of the agreement and delivery of the automobile to him.

(3) At the termination of the rental agreement, the customer returns the leased automobile to the defendant's place of business off the premises of the Airport, whereupon the corporate defendant transports him and his baggage to the Airport Terminal Building and returns the automobile, used for this purpose, to its own place of business, customarily using for such transportation the same automobile originally rented to the customer.

(4) In so serving its customers, the corporate defendant uses the driveways, waiting areas and parking facilities of the Airport.

The Airport Authority does not contend that the defendant solicits customers upon the Airport premises or that the vehicles

of the corporate defendant remain upon those premises otherwise than in the normal course of picking up and discharging customers as above described.

*Purrington & Purrington by A. L. Purrington, Jr., for plaintiff appellant.*

*Tally, Tally & Bouknight by J. A. Bouknight, Jr., for defendant appellees.*

LAKE, Justice.

In *Harrelson v. Fayetteville,* 271 N.C. 87, 155 S.E. 2d 749, we held that a municipal corporation, owning and operating a public airport, is authorized to grant an exclusive franchise for the operation of a common carrier limousine service for the transportation of passengers and their baggage to and from the airport. We there cited, with approval, as authority for the proposition that, in so doing, the municipality is acting in a proprietary capacity: *Miami Beach Airline Service v. Crandon,* 159 Fla. 504, 32 So. 2d 153, 172 A.L.R. 1425; *North American Co. v. Bird,* 61 So. 2d 198 (Fla.); Ex Parte Houston, 93 Okla. Crim. 26, 224 P. 2d 281; *Stone v. Police Jury of Parish of Calcasieu,* 226 La. 943, 77 So. 2d 544; *City of Oakland v. Burns,* 46 Cal. 2d 401, 296 P. 2d 333. This Court so held in *Rhodes v. Asheville,* 230 N.C. 134, 52 S.E. 2d 371, rehear. den., 230 N.C. 759, 53 S.E. 2d 313. In the Miami Beach Airline Service case, *supra,* the Supreme Court of Florida said, "When given authority to do so a governmental entity is expected to perform a proprietary function under like rules and regulations as those pursued by private individuals."

We further cited in support of our conclusion in the Harrelson case, *supra,* the statement in 8 Am. Jur. 2d, Aviation, § 56, that such authority of the municipality extends to the granting of "an exclusive taxicab or limousine or car-rental concession at the airport."

G.S. 63-53(3) provides that a municipality is authorized "to confer the privileges of concessions of supplying upon its airports goods, commodities, things, services and facilities; provided that in each case in so doing the public is not deprived of its rightful, equal and uniform use thereof."

Airport Authority v. Stewart

In Rhyne, Municipal Law, § 22-16, it is said that the courts unanimously recognize the authority of a municipal corporation operating a publicly owned airport to grant an exclusive concession to one company to furnish taxicab or limousine service at the airport. See also: *Rocky Mountain Motor Co. v. Airport Transit Co.*, 124 Colo. 147, 235 P. 2d 580; *Associated Cab Co. v. City of Atlanta*, 204 Ga. 591, 50 S.E. 2d 601; *Hertz Drive-Ur-Self System v. Tucson Airport Authority*, 81 Ariz. 80, 299 P. 2d 1071.

Our attention has been directed to no decision, or other authority, to the effect that a municipal corporation, operating a public airport, or other public transportation terminal, has more extensive authority to exclude persons or vehicles from the terminal grounds than does a privately owned common carrier operating such a terminal for the use and convenience of its passengers. Again, we have been cited to no authority making a distinction in this respect between an airport and a railroad or steamship terminal, and we perceive no basis for such a distinction.

It is well settled that a railroad company may grant to a single taxicab company the exclusive right to enter, or remain upon, the premises of its passenger terminal for the purpose of soliciting the patronage of potential users of taxicab service, or may exclude all persons from so using its premises for such solicitation. *Black and White Taxicab, etc. Co. v. Brown and Yellow Taxicab, etc. Co.*, 276 U.S. 518, 48 S. Ct. 404, 72 L. Ed. 681, 57 A.L.R. 427; *Delaware, L. & W. Railroad Co. v. Town of Morristown*, 276 U.S. 182, 48 S. Ct. 276, 72 L. Ed. 523; *Donovan v. Pennsylvania Company*, 199 U.S. 279, 26 S. Ct. 91, 50 L. Ed. 192; *Skaggs v. Kansas City Terminal Railway Co.*, 233 F. 827 (W. D. Mo.). A distinction is made, however, between the authority of such a carrier to grant such an exclusive permit, or concession, to enter or stand upon its property for solicitation of patronage and its authority to deny admission to its premises to discharge a passenger and his baggage, or to pick up a passenger and his baggage, pursuant to a contract previously made between such passenger and the taxicab operator. In neither respect is there any basis for distinction between the operator of a taxicab business and the operator of a car rental agency.

The source of the right of the operator of a taxicab to drive upon the premises of the common carrier of passengers to

discharge thereon, or pick up therefrom, a passenger of the common carrier, from whom the taxicab operator has already received a request for his service, is not an independent right of the operator of the taxicab to use the station grounds, but is the right of the passenger to convenient ingress and egress to and from the terminal of the common carrier. As Justices Brandeis and Holmes observed, concurring in part in the decision in *Delaware, L. & W. Railroad Co. v. Town of Morristown*, *supra:*

> "In these days, the ability of the traveller to obtain conveniently, upon reaching the street door of the station, a taxicab to convey him and his hand-baggage to his ultimate destination, is an essential of adequate rail transportation. The duties of a rail carrier are not necessarily limited to transporting freight and passengers to and from its stations. It must, in connection with its stations, provide adequately for ingress and egress."

The importance to the passenger of transportation between the terminal of the common carrier and his ultimate destination, or point of origin, in the community is even greater in the case of the modern airport, situated several miles from the center of the city.

The leading case recognizing this right of an incoming passenger at the terminal of a common carrier to be met and picked up on the terminal premises by a hackman, for whose services the passenger had made previous arrangements, even though the hackman had been forbidden by the terminal proprietor to solicit or stand upon its grounds, is *Griswold v. Webb*, 16 R.I. 649, 19 A. 143. There, Stiness, J., speaking for the Court, said:

> "[A] railroad station or steamboat wharf is, to some extent, a public place. The public have the right to come and go there for the purpose of travel; for taking and leaving passengers; and for other matters growing out of the business of the company as a common carrier. But the company has the right to say that no business of any other character shall be carried on within the limits of his property. It has the right to say that no one shall come there to solicit trade, simply because it may be convenient for travellers, and so to say that none, except those whom it permits, shall solicit in the business of hacking * * *

"But, while this is so, the company cannot deprive a passenger of the ordinary rights and privileges of a traveller, among which is the privilege of being transported from the terminus in a reasonably convenient and usual way. A company cannot compel a passenger to take one of certain carriages, or none at all; nor impose unreasonable restrictions, which will amount to that. If a passenger orders a carriage to take him from the terminus, such carriage is *pro hac vice,* a private carriage * * *"

Numerous opinions from other jurisdictions intimate support for this view that, while a railroad company may grant an exclusive permit or concession to solicit patronage upon its terminal premises, and may forbid others to park their vehicles thereon to wait there in the mere hope of employment by an arriving passenger, it may not deny access to its property to one who comes to deliver or pick up a passenger pursuant to the passenger's request that he do so. See: *Black and White Taxicab, etc. Co. v. Brown and Yellow Taxicab, etc. Co., supra; Donovan v. Pennsylvania Co., supra; Skaggs v. Kansas City Terminal Railway Co., supra; Yellow Cab Co. of Ashland v. Murphy,* 243 S.W. 2d 42, 45 (Ky.) ; *Old Colony Railroad Co. v. Tripp,* 147 Mass. 35, 37, 17 N.E. 89; *Godbout v. St. Paul Union Depot Co.,* 79 Minn. 188, 81 N.W. 835; *Hedding v. Gallagher,* 72 N.H. 377, 387, 57 A. 225; *Thompson's Express & Storage Co. v. Mount,* 91 N.J. Eq. 497, 111 A. 173, 15 A.L.R. 351; *Long Island Railroad Co. v. Summers,* 263 N.Y. App. Div. 889; *Norfolk & Western Railway Co. v. Old Dominion Baggage Co.,* 99 Va. 111, 37 S.E. 784. See also: 13 CJS, Carriers, § 567; and Note, 37 Harv. L. Rev. 377. More recent intimations that this concept extends to the right to enter the premises of an airport for such purpose are found in: *Friend v. Lee,* 221 F. 2d 96 (Cir. Ct. D.C.) ; *Patton v. Administrator of Civil Aeronautics,* 217 F. 2d 395 (9th Cir.) ; and *United States v. Jenkins,* 130 F. Supp. 808 (E.D. Va.).

There is, in the case before us, no contention that the defendant's employees solicit patronage on the premises of the Airport Authority, or that its vehicles remain thereon longer than necessary to discharge an outgoing passenger and his baggage or to locate and pick up an incoming passenger, and his baggage, which passenger has previously requested the defendant's service by telephone or otherwise. To forbid the defend-

ant to enter the terminal premises, in response to such a call by the passenger, would be to require the passenger to use a rental car service he does not wish to patronize, use no such service, or walk and carry his own baggage from the terminal to the defendant's place of business or to some intermediate point of contact, and, upon completion of his mission in the community, to walk back, carrying his baggage, from the defendant's place of business, or the entrance to the airport premises, to the terminal building. This would deny the passenger his right to convenient egress and ingress from and to the terminal.

We, therefore, hold that although the plaintiff may grant one or more concessions to other car rental companies and may permit them to enter and remain upon its premises for the solicitation of business, while denying such privilege to the defendant, it may not forbid the defendant, in an otherwise lawful and proper manner, to enter its premises and remain thereon for such time as is reasonably necessary to discharge an outgoing passenger, with his baggage, or to pick up an incoming passenger, with his baggage, pursuant to an actual, previously made contract or a previously received request for such service.

The judgment of the Court of Appeals, reversing the judgment of the Superior Court and, thereby, vacating the injunction granted by the Superior Court is

Affirmed.